UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re

JOHN MOSER,                                           No. 09-11945

                        Debtor(s).
_____/

BRAD FARMER, et al.,

                        Plaintiff(s),

           v.                                A.P. No. 09-1126

JOHN MOSER,

                        Defendant(s).
_____/

Memorandum After Trial
_____

     This case was very difficult to try and took far longer than it should have, largely due to the fact that plaintiffs did not understand their own case until the last hour or so. The facts are simple and largely undisputed.

     In 2004, Debtor and Defendant John Moser, a medical doctor heavily involved in real estate development, borrowed $200,000.00 from plaintiffs Brad Farmer and Gar Bailey. The note Moser signed was supposed to be secured by two commercial properties, including a second position lien on

1

219 Brannan Street, Unit 12A, San Francisco, California.[1]  However, the title officer who prepared the deed of trust neglected to attach the legal description of the Brannan Street property.

In 2005, Moser refinanced the Brannan Street property by borrowing $653,000.00 from Long Beach Mortgage Company. Plaintiffs' lien did not appear on the title report, so Long Beach Mortgage received what it believed to be a first deed of trust. Moser received $106,040.65, when the escrow closed on March 2, 2005, which must have come as a great surprise to him since up to that time he must have assumed that plaintiffs' deed of trust would have entitled them to the excess after the senior lien was satisfied.

Subsequently, Moser gave other lenders a junior deed of trust on the Brannan Street property along with junior deeds of trust on other properties Moser owned.

In early 2007, Moser sold the Brannan Street property for $780,000.00. Long Beach Mortgage (now actually Washington Mutual Bank) was paid in full, and the holders of the second agreed to take the balance of $78,885.29 in return for reconveyance of their deed of trust. Moser got nothing from the sale.

In 2009, a bench trial was held in the Superior Court of California, County of San Francisco. The state court issued a proposed statement of decision holding that plaintiffs' deed of trust was defective and did not impart constructive notice of their lien to the two subsequent lenders. It also went on to find that "Moser actively concealed the [2007] sale of the Brannan Street Property from Farmer/Bailey and/or prevented Farmer/Bailey from discovering the sale . . . and that Moser's concealment of the sale was a substantial factor in causing Farmer/Bailey harm." This latter finding has caused considerable grief in this adversary proceeding, as it appears patently wrong. Plaintiffs spent a considerable time trying to force this square peg into a round hole to justify a claim that their claim is nondischargeable pursuant to § 523(a)(2) of the Bankruptcy Code.

The state court correctly concluded that plaintiffs' deed of trust was defective and did not

---

[1] The other property was lost to foreclosure, and is of no consequence in this action.

impart notice to Long Beach Mortgage and the other deed of trust holders.  If this was the case, then concealment of the 2007 sale from plaintiffs could not have caused harm to plaintiffs because even had they known about the sale there was *nothing they could have done*.  Long Beach Mortgage and the subsequent lenders had already given value in reliance on the fact that they would be in first and second position.

If George Washington had denied he had cut down the cherry tree, his statement would have been false but not fraud; the damage was done when the tree was felled.  Likewise, concealment of the sale of the Brannan Street property, and even active misrepresentation to plaintiffs that they would be paid from that escrow had they been told of it, cannot be fraud.  The damage had been done much earlier, and was irreversible.

Plaintiffs argue that the court should give preclusive effect to the state court decision.  Setting aside the fact is was not final, the court declines to do so because it is internally inconsistent; if plaintiffs' deed of trust was defective and therefore not senior to the deeds of trust of Long Beach Mortgage and the subsequent junior deed of trust, then concealment of the Brannan Street sale was a dishonest act and evidence that Moser knew that he had cheated plaintiffs, but not fraud because the acts causing harm had been done long before.  Application of principles of issue preclusion and claim preclusion is a matter of discretion.  *In re Lopez*, 367 B.R. 99, 108 (9th Cir.BAP 2007).  The court exercises its discretion to disregard the state court decision because it is flawed.

However, all of the above does not mean that Moser's debt to plaintiffs is necessarily dischargeable.  It means that focus must shift to what Moser knew when he allowed the Long Beach Mortgage escrow to close and kept the funds paid to him, and when he subsequently encumbered the Brannan Street property.

When a debtor comes into possession of funds he knows he has pledged to a secured creditor as collateral, his knowing and willful conversion of the funds by using them for his own purposes instead of turning them over to the secured creditor creates a debt which is nondischargeable pursuant to §

3

523(a)(6) of the Bankruptcy Code. *In re Thiara,* 285 B.R. 420, 427-29 (9th Cir. BAP 2002); *In re Dubovoy,* 377 B.R. 705, 711 *(*Bkrtcy.M.D.Fla. 2006); *In re Lett,* 238 B.R. 167 (Bkrtcy.W.D.Mo. 1999).

The sole issue in this case is whether Moser's conversion was willful and malicious. Moser argues that his conversion was innocent because he had numerous properties and was constantly buying selling and refinancing so that he did not realize that a mistake had been made. The court does not believe him for numerous reasons. First, the receipt of $106,040.65 from the Long Beach Mortgage escrow must have been a complete surprise; Moser had no reason to expect a dime out of that escrow. Second, the properties and transactions were not so numerous that Moser could reasonably lose track of them. Third, Moser's real estate agent and former girlfriend gave ample testimony as to his amoral attitude toward mistakes by title companies.[2] Most importantly, Moser appeared on the stand to be nervous and evasive. From all of these factors, the court finds that Moser knew that a mistake had been made, knew that the funds from the Long Beach Mortgage escrow belonged to plaintiffs, knew that he could offer the subsequent lenders a junior deed of trust on the Brannan Street property because plaintiff's deed of trust did not show on a title report, and intentionally kept the funds and encumbered the property even though he knew he was injuring plaintiffs. His debt to them is accordingly nondischargeable pursuant to § 523(a)(6).

For the foregoing reasons, the court finds a nondischargeable debt is owed by Moser to plaintiffs in the amount of $184,925.94 plus interest at the federal legal rate from and after March 2, 2005, as to $106,040.65 and from and after February 16, 2007, as to the balance. Pursuant to stipulation of the parties, issues related to plaintiff's attorneys fees, the collateral source rule, and any offset issues will be addressed in post-trial motions.

This memorandum constitutes the court's findings and conclusions pursuant to FRCP 52(a) and

---

[2]The relationship ended badly, and Moser would have the court discount the agent's testimony on that account. However, the court believes that the breakup causes the agent to reveal prior confidences, not make up false testimony.

4

1 | FRBP 7052. Counsel for plaintiff shall submit an appropriate form of judgment after post-trial
2 | motions have been adjudicated.

Dated: November 7, 2010

                                                      Alan Jaroslovsky
                                                     U.S. Bankruptcy Judge

5

Case: 09-01126    Doc# 32    Filed: 11/07/10    Entered: 11/08/10 08:33:29    Page 5 of 5